**Gary S. LORFANO, et al.**

v.

**DURA STONE STEPS, INC., et al.**

Supreme Judicial Court of Maine.

Argued Jan. 3, 1990.

Decided Jan. 29, 1990.

Robert Knight (orally), Daniel Warren, Bean, Jones & Warren, Scarborough, for appellants.

Jonathan S. Piper, Joan M. Koski (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for Dayton Sand & Gravel Co.

Harold J. Friedman (orally), Jennifer S. Begel, Friedman & Babcock, Portland, for Dura Stone Steps.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, HORNBY and COLLINS, JJ.

WATHEN, Justice.

Plaintiffs Gary and Jo–Ann Lorfano appeal from an order of the Superior Court (Cumberland County, *Alexander, J.*) granting summary judgment in favor of defen-

dant Dura Stone Steps, Inc. (Dura Stone).[1] Although plaintiffs do not challenge the judgment entered on their negligence claim, they contend on appeal that Dayton was not entitled to judgment as a matter of law on their claims of strict liability and breach of warranties. We disagree and affirm judgment.

The facts developed at the motion hearing may be summarized as follows: Plaintiff Gary Lorfano's employer maintained an office in a building owned by Dayton Sand & Gravel, Inc. (Dayton). On July 9, 1985, he was injured when he fell off the side of a set of prefabricated concrete steps at the entry to the building. The steps consisted of four risers and were manufactured by Dura Stone and installed by them on a concrete base fabricated by Dayton. When the steps were ordered, Dura Stone's sales manager offered to sell handrails to accompany the steps, but Dayton's purchasing agent refused.

Gary Lorfano and his wife filed suit, naming both Dayton and Dura Stone as defendants. The Superior Court granted Dura Stone's motion for summary judgment. On appeal, plaintiffs challenge the order as it relates to their claims based on strict liability and breach of warranties.

## I.

◼ Plaintiffs do not contend that the steps were defective in design or manufacture. Rather, they argue that Dura Stone is strictly liable because of a failure to warn of the dangers presented by the use of the steps without handrails. Maine's strict products liability statute provides as follows:

> One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

14 M.R.S.A. § 221 (1980). We have previously traced the development of liability predicated upon a duty to warn back to comment j to section 402A of the *Restatement (Second) of Torts* (1965). *See Bernier v. Raymark Industries, Inc.*, 516 A.2d 534, 538 (Me.1986). It is now clear that a product, "although faultlessly made, may nevertheless be deemed 'defective' under the [statute] and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given." *Canifax v. Hercules Powder Co.*, 237 Cal.App.2d 44, 53, 46 Cal.Rptr. 552, 558 (1965). Admittedly this aspect of strict liability bears a strong resemblance to a negligence action. Professor Prosser describes an action premised on a failure to warn in the following terms:

> Although this ground of recovery is sometimes referred to as strict liability, it is really nothing more than a ground of negligence liability described as the sale of a product in a defective condition, subject, however, only to the defenses and other limitations on liability applicable to strict liability rather than negligence.

W. Prosser & W. Keeton, *The Law of Torts*, § 99 at 697 (5th ed. 1984). *See also Bernier v. Raymark Industries, Inc.*, 516 A.2d at 540 ("A strict liability failure-to-warn case does resemble a negligence action because the reasonableness of the

---

1. The co-defendant, Dayton Sand & Gravel, Inc., also appeals. In entering summary judgment in favor of Dura Stone, the Superior Court stated that neither plaintiffs nor Dayton could recover against Dura Stone. Because no cross-claim for contribution or indemnity was ever filed, Dura Stone's obligation to contribute was not before the Court. Accordingly, we strike that portion of the order.

manufacturer's conduct is the critical issue.").

We have construed the statute as requiring that "[a] manufacturer has a responsibility to inform users and consumers of dangers about which he either knows or should know at the time the product is sold." *Id.* As a corollary to that rule, however, courts have held that a manufacturer has no duty to warn of a danger that is obvious and apparent. *See, e.g., Plante v. Hobart,* 771 F.2d 617, 620 (1st Cir.1985); Annotation, *Failure to Warn as Basis of Liability Under Doctrine of Strict Liability in Tort,* 53 A.L.R.3d 239, 257 (1973 & Supp.1989), and cases cited therein. We conclude that the dangers posed by the use of steps without a handrail are patently obvious and equally apparent to all. *Carlson v. Hampl,* 169 N.W.2d 56, 58 (Minn. 1969); *Inman v. Binghamton Housing Authority,* 3 N.Y.2d 137, 164 N.Y.S.2d 699, 143 N.E.2d 895, 899 (1957). The Superior Court correctly entered summary judgment as a matter of law.

### II.

Plaintiffs argue that a genuine issue of fact is presented as to whether Dura Stone breached the implied warranties of merchantability and fitness for a particular purpose by selling steps without a handrail. *See* 11 M.R.S.A. § 2–314 and § 2–315 (1964). Plaintiffs suggest that the steps were unmerchantable and unfit because they failed to assist plaintiff Gary Lorfano in exiting safely from Dayton's building.

Plaintiffs' argument is without merit. The implied warranty of merchantability requires that a product be "fit for the ordinary purposes' for which such [products] are purchased." White & Summers, *Uniform Commercial Code* § 9–7 at 349 (1980). Thus, in order to prevail on a § 2–314 claim, plaintiffs must show that the steps "because of defects either did not work properly or were unexpectedly harmful." *Id.* at 351. In fact, Dura Stone's steps performed as expected. The implied warranty of fitness for a particular purpose is even narrower. It requires that: (1) the purchaser have a particular purpose

*outside* the scope of ordinary purposes; (2) the seller at the time of contracting has reason to know of the particular purpose; (3) the seller has reason to know that the purchaser is relying on the seller's skill or judgment to furnish appropriate goods; and (4) the purchaser must, in fact, rely upon the seller's skill or judgment. *Id.* at 358. Plaintiffs have failed to generate any genuine issue of fact concerning the possible application of either § 2–314 or § 2–315.

The entry is:

Judgment modified to delete the reference to the potential claim of Dayton Sand & Gravel, Inc., and, as so modified, affirmed.

All concurring.